IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No. 1:14-cr-00240 |
| v. : | |
| : | (Judge Kane) |
| **ANDREW ALEXANDER,** : | |
| Defendant : | |

## MEMORANDUM

Before the Court is Defendant Andrew Alexander's omnibus pretrial motion to: (1) suppress all evidence associated with a search warrant executed on March 13, 2013, (2) dismiss the indictment for selective and/or vindictive prosecution, and (3) reveal the identity of the confidential informant who provided information that led to the execution of the March 13, 2013 search warrant. (Doc. No. 50.) The Court held a hearing on Defendant's motion on June 8, 2015. For the reasons that follow, the Court will deny Defendant's motion.

I.   BACKGROUND

The case arises out of an investigation into gang activity in York, Pennsylvania. On March 12, 2013, Detective Scott Nadzom submitted an application for a warrant to search 356 Oak Lane in York. (See Doc. No. 71-1 at 2-4.) On the warrant application, Nadzom wrote that he received information from a confidential and reliable informant regarding drug vending operations at that residence. (Id. at 3.) According to the informant, Defendant Alexander and a man named Juan Castro – known as "Spesh" and "Chucky," respectively – were storing drugs at the residence, where a woman named "Veronica" – her full name is Veronica Rivera – resided. (Id.) The informant also indicated that there was an outstanding Pennsylvania State Parole warrant for Defendant's arrest, and that Defendant stayed at 356 Oak Lane when he was in the

1

area. (Id.) Nadzom indicated that the informant was credible and had provided reliable and correct information in the past, information that led to at least one arrest. (Id.) Nadzom further described his corroboration of some of the informant's tips in this case, including but not limited to: (1) that drugs and drug paraphernalia were found in the residence's trash the morning prior to the warrant application,[1] (2) that there was an outstanding PA State Parole warrant for Defendant's arrest, and (3) that Nadzom spotted a Brown BMW station wagon and a red Toyota – cars the informant said were driven by Defendant and Rivera, respectively – at the residence. (Id.)

Police executed the warrant in the early morning of March 13, 2013. (See Doc. No. 71-1 at 6.) Police found drugs, including heroin and crack cocaine, and assorted drug paraphernalia. (See id. at 14-15.) In addition to Defendants Alexander, Rivera and Andrew Gonzales, a young child and two women – Natalie Rojas and Iris Gonzales – were found in the residence. (Id. at 14.) Authorities also found handwritten notes on Defendant's person containing names and dollar values, notes similar to those located in the trash prior to Nadzom's warrant application; although the police categorize these as "drug owe sheets" (see Doc. No. 71-1 at 14), Defendant testified that the notes were just reflective of gambling and loans, rather than any drug activity.

---

[1] Specifically, Nadzom noted in the warrant application that on the morning of March 12, 2013, they found in the trash:

> multiple sandwich bags and baggie corners with a white colored residue, numerous sandwich bags with both corners missing, a sandwich bag containing a green leafty [sic] substance, several drug owe sheets (crib sheets) and mail addressed to 'Veronica Rivera of 356 Oak Ln. York PA 17401.' The white colored substance later field-tested positive for cocaine while the green leafy substance field-tested positive for marijuana.

(Doc. No. 71-1 at 3-4.)

(Hearing transcript at 157:16 -160:10.) State drug charges were subsequently filed in the York County Court of Common Pleas against Defendant, Andrew Gonzales and Rivera.[2] While these proceedings were ongoing, two other search warrants were executed related to Alexander, including one at the home of Octavia Williams, who testified at the hearing before this Court that she does not know Defendant Alexander. (Doc. No. 71 at 5-6; Hearing transcript at 62:16-19.)

Thereafter, on September 10, 2014, a federal grand jury returned a two count indictment against Defendant Alexander and his co-defendants Andrew Gonzales and Rivera arising from the March 13, 2013 search. (Doc. No. 22.) The Defendants were charged with distribution of controlled substances in violation of 21 U.S.C. § 841(a), and conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846. (Id.) Defendant Alexander later filed the present motions before the Court. The Court held a hearing on the motions on June 8, 2015.[3] The motions are fully briefed and ripe for disposition.

## II.     DISCUSSION

The Court will first address Defendant's motion to suppress the evidence found during the execution of the warrant of March 13, 2013. The Court will then address Defendant's motion to dismiss the indictment. Lastly, the Court will address Defendant's motion seeking the identity of the confidential information relied upon in the application for the March 13, 2013 search warrant.

### A.     Motion to suppress evidence

---

[2] It appears that Alexander filed a motion to suppress this same evidence in state court, and his motion was denied in July 2014. (See Doc. No. 71 at 4.)

[3] Defendant also moved for release to a third party custodian, a motion the Court orally denied at the June 8 hearing. (Hearing transcript at 198:11-21.)

In his application for the March 13, 2013, search warrant, Nadzom wrote that the informant told him that Defendant drove a brown BMW station wagon, and that when Defendant was in the York area, he stayed with Rivera. (Doc. No. 71-1 at 3.) Nadzom further indicated that on January 31, 2013, he observed a brown BMW station wagon parked on the block of Rivera's house with the license plate HRZ-0653. (Id.) Defendant contends that both of these statements are intentionally false and made with reckless disregard for the truth, as Alexander does not own a brown BMW station wagon, and lives in York, so he is not a visitor to the area as Nadzom implied. (Doc. No. 65 at 18) Accordingly, Defendant asks the Court to strike these statements, invalidate the warrant, and suppress all evidence acquired pursuant to the search.

Suppression of evidence is appropriate where it was obtained "pursuant to a warrant issued on the basis of a false statement that was both material to the finding of probable cause and made either knowingly and intentionally or with reckless disregard for the truth." United States v. Brown, 631 F.3d 638, 641-42 (3d Cir. 2011) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)). Therefore, "in order to void the warrant and suppress the evidence, the defendant must show both [1] that bad faith or reckless disregard existed on the part of the affiant, and [2] that there would have been no probable cause but for the incorrect statement." United States v. Shields, 458 F.3d 269, 276 (3d Cir. 2006).

Accordingly, first, "a Defendant must prove by a preponderance of the evidence that the statement was made knowingly and intentionally." United States v. Thompson, No. 11-0077, 2013 WL 594019, at *3 (M.D. Pa. Feb. 15, 2013) (citing Franks, 438 U.S. at 155-56). If the Defendant does so, the Court must then "examine the warrant application with the false material omitted and determine if the affidavit's remaining content is sufficient to establish probable

cause." Id. If it is not sufficient to establish probable cause, the evidence must be suppressed.

The Court finds that the allegedly false statement is immaterial; that is, even if the Court removes the information regarding the brown BMW spotted outside the property, there is still ample probable cause for the search. This includes the most compelling evidence tending to show probable cause – that drugs and drug paraphernalia were found in the residence's trash the day before Nadzom sought the warrant.[4] See Illinois v. Gates, 462 U.S. 213, 238 (1983) (noting that probable cause for the issuance of a warrant is found where, under the totality of the

---

[4] As the Court noted in the background section, Nadzom's warrant application indicated that police found substances that field-tested as cocaine and marijuana in the trash on the morning of March 12, 2013. It came up at the hearing that defense counsel intended to call an expert who would argue that the field test used on the cocaine was not reliable. (Hearing Transcript at 5:13-25, 6:1-12.) The Court – finding that neither it nor the United States was on sufficient notice of these new grounds for relief, as it was not present anywhere in Defendant's filings – declined to hear the testimony, but informed the parties that if it found the field testing of the cocaine relevant to its probable cause determination, it would schedule another hearing. (Id. at 17:2-14, 18:14-19.) Having analyzed the warrant application and the applicable law, the Court finds that even if it strikes the cocaine from the warrant application, ample probable cause is still present on the face of the application, by virtue of the drug paraphernalia in the trash and the tips by the purportedly reliable informant. Accordingly, no additional hearing is necessary regarding the cocaine field test.

Regarding the application's assertion that a substance that field-tested as marijuana was also found in the trash, counsel did not state that her proposed expert was to testify to the reliability of the field testing of the marijuana; indeed, she clarified that the expert report was "specific to the cocaine." (Id. at 15:3-8.) Nevertheless, counsel did not concede the issue of the marijuana testing, noting that her expert's report further discussed "field tests in general and the things that are required for field tests" and speculating that her expert "can also speak to the marijuana by hypothetical field test if those same items were not perform[ed]." (Id. at 15:3-12.) (emphasis added). Thus, it appears to the Court that counsel was not yet sure what, if any, challenge could be raised regarding the field testing of the marijuana, and, moreover, that the reliability of the marijuana field-testing was not raised in her proposed expert report. The Court is not inclined to strike such an item without, as was at least the case with the cocaine field testing, a clear assertion that Defendant has an expert report that directly speaks to the field testing at issue. Nevertheless, although there are no grounds for this Court to strike the info marijuana from the face of the warrant application, the Court emphasizes that it finds that even if both the information pertaining to marijuana and cocaine field-testing were removed, there is still ample probable cause for the search on the face of the warrant application.

circumstances, "there is a fair probability that . . . evidence of a crime will be found in a particular place").

Moreover, it was the informant's assertion that drug trafficking activity was taking place on the property, and Nadzom indicated in the warrant that the informant had been reliable in the past in obtaining other arrests, information which speaks strongly to a finding of probable cause. See United States v. Williams, 3 F.3d 69, 72 (3d Cir. 1993) ("Even where the information tendered consisted solely of the uncorroborated report of an anonymous informer, probable cause would normally be found to exist where a law enforcement officer was able to say that the informant had provided reliable information in other matters."). There is also additional information from the informant that Nadzom corroborated, such as the outstanding arrest warrant for Alexander.[5]

Additionally, as the government points out, the challenged statements related to the BMW are evidence that <u>Alexander was in the residence</u>, rather than evidence <u>that drugs were likely to be found at the residence</u>. What Nadzom obtained was a search warrant for the property. This further underlines that the application's assertions regarding the car are immaterial on the issue of probable cause for the search warrant.[6] Similarly, the Court rejects

---

[5] Defendant also argues that "all mention of the CI's statements must be redacted" (Doc. No. 65 at 18), an issue necessarily intertwined with Defendant's motion to reveal the identity of the confidential informant, which motion the Court will discuss in Section C. At bottom, Defendant wants the Court to find that the statements attributed to the CI in the warrant application were false. As the Court will discuss in section II.C, infra, the Court will not do so, as Defendant offers little more than speculation on this point.

[6] Although, as discussed above, it is irrelevant to the ultimate probable cause determination, the Court also concludes that Defendant has not met his high burden to show that Detective Nadzom was not merely incorrect or mistaken but made an intentionally false statement with regards to the brown BMW he allegedly spotted outside Ms. Rivera's residence.

Defendant's argument concerning the alleged staleness of the BMW information. Accordingly, the Court will deny Defendant's motion to suppress the evidence uncovered during the search of March 13, 2013.

### B. Motion to dismiss the indictment

#### 1. Selective Prosecution

Defendant Alexander, an African-American, asks the Court to dismiss the indictment on the grounds that he has been selectively prosecuted on the basis of his race. (Doc. No. 65 at 19-20.) According to Defendant, "the other stated suspect who is alleged as Defendant is alleged to be involved in the trafficking of controlled substances through Veronica Rivera's residence is Juan Castro, a Hispanic male who was not charged." (Id. at 20.)

"Although prosecutors enjoy wide discretion, they may not prosecute based on a defendant's 'race, religion, or other arbitrary classification.'" United States v. Gist, 382 F. App'x 181, 183 (3d Cir. 2010) (quoting United States v. Armstrong, 517 U.S. 456, 464 (1996)). Prosecutors are presumed not to violate equal protection, and a defendant can rebut this

---

See Franks, 438 U.S. at 171 ("[N]egligence or innocent mistake are insufficient [to establish reckless disregard].")
   Defendant's mother Lorrie Rhoades testified that she never owned a brown BMW, merely a black BMW. (Hearing transcript at 44:21-22.) She testified, however, that Alexander did drive her black BMW, and that it was sold sometime in 2013; she does not remember the date but testified that "it was still warm out." (Id. at 42:21-25, 43:1, 46:24-25, 47:1-7.) Ms. Rhoades also testified that the license plate Nadzom purportedly saw on the brown BMW – HRZ0653 – was actually on a different car of hers, a Cadillac, which she sold in 2012, and which car Alexander frequently drove. (See id. 45:1-5, 50:19-20, 51:21-23.) Ms. Rhoades further testified that she usually removes and keeps the tags when she sells a car, and turns the tags in. (Id. at 56:10-25.) However, as of November 28, 2014, the disputed tag is her in name according to Department of Motor Vehicle records. (Id. at 59:1-25 - 61:1-4.)
   Regardless, for the reasons discussed above, this finding is not material to the disposition of the motion to suppress, and the Court need not conclusively resolve this factual dispute.

presumption only by "clear evidence to the contrary." Id. (quoting Armstrong, 517 U.S. at 465.) Accordingly, "[t]o establish a claim of selective prosecution, the defendant must show by clear evidence that: (1) similarly situated individuals have not been prosecuted; and (2) that the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor." United States v. Schmutzler, No. 13-00065, 2015 WL 1912608, at *2 (M.D. Pa. Apr. 27, 2015) (citing Armstrong, 517 U.S. at 463); see United States v. Taylor, 686 F.3d 182, 196 (3d Cir. 2012).

The Court finds that the selective prosecution claim is meritless. Regarding the first prong, that a similarly situated individual has not been prosecuted, Defendant offers little more than the conclusory assertion that "Juan Castro" is similarly situated to Defendant. See Schmutzler, 2015 WL 1912608, at *2 (citing Starzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008)) ("[Individuals are] similarly situated only if [they are] alike in all relevant aspects . . . . not just that they are alike with respect to relative culpability"). Although Defendant emphasizes that Nadzom named Castro alongside Defendant in his warrant application, it also appears that Castro – unlike the three Defendants named in this indictment – was not present the morning the warrant was executed. Indeed, there are very few facts before the Court regarding Castro, and Defendant offers far too little evidence for the Court to find Castro and Alexander sufficiently similarly situated for purposes of Defendant's selective enforcement claim.

Moreover, even if Defendant could establish that Castro is similarly situated to Defendant, Defendant offers no evidence – let alone "clear evidence" – that the decision was racially motivated. Defendant's argument hinges on the fact that Alexander is African-American and Castro, who was not charged, is Hispanic. (See Doc. No. 65 at 20.) However, as the

government points out, Alexander's co-Defendants, Rivera and Andrew Gonzales, who were indicted, are both Hispanic (Doc. No. 71 at 9), undermining Defendant's assertion that his prosecution is based on his African-American race and its corollary that the prosecution has given favorable treatment to non-African-Americans in conjunction with this investigation and prosecution. The Court simply cannot infer any racial motivations on the record before it. Accordingly, the Court will deny this aspect of Defendant's motion.[7]

### 2.     Vindictive Prosecution

Defendant alternatively argues that the Court should dismiss the indictment on the grounds that Defendant was vindictively prosecuted in violation of his civil rights. Defendant does not hinge this theory on allegations of racial bias; rather, he appears to contend that the government initiated the federal charges in retaliation for his refusal to cooperate with the then-ongoing state court proceedings. (Doc. No. 65 at 21-22.)

"Prosecutorial vindictiveness may occur when the government penalizes a defendant for invoking legally protected rights." United States v. Schoolcraft, 879 F.2d 64, 67 (3d Cir. 1989). In vindictive prosecution cases, the defendant bears the initial burden of establishing the appearance of vindictiveness. United States v. McKay, No. 12-324, 2013 WL 2393002, at *5 (M.D. Pa. June 3, 2013) (citing Schoolcraft, 879 F.2d at 68.) In contrast, "there is no

---

[7] Defendant also makes the claim in his brief that "the government is relying on the testimony of Veronica Rivera, Hispanic female, who is willing to testify to implicate Defendant because he is African-American, but she is not willing to testify to implicate Juan Castro or Andrew Gonzales, Hispanic males." (Doc. No. 65 at 20-21.) Even accepting that statement as true, Defendant does not explain why Rivera's alleged racial bias should be imputable to the government, nor connect Rivera's alleged racial bias to the charging decisions ultimately made by the prosecution in this matter.

prosecutorial vindictiveness . . . where the prosecutor's decision to prosecute is based on the usual determinative factors." Schoolcraft, 879 F.2d at 67–68. "To show that the decision to prosecute is not based on the usual determinative factors, a defendant must make a substantial threshold showing of an improper motivation on the prosecutor's part." McKay, 2013 WL 2393002, at *5 (internal quotations omitted). "A defendant must also present evidence indicating that absent this motive, defendant would not have been prosecuted." Id.

The Court finds that Defendant has not met his burden of establishing even the appearance of vindictiveness; he offers little more than the bare assertion that the detectives and prosecutors "conspired to file federal charges in an effort to entice a plea from Defendant" (Doc. No. 65 at 22). See United States v. Baskerville, No. 03–836, 2007 WL 150439, at *2 (D.N.J. Jan. 17, 2007) ("Prosecutorial vindictiveness is not established simply because a defendant exercised a legal right and was subsequently indicted for an additional offense."). Indeed, it was the uncontested testimony of Agent Endy that it was Rivera's failure to cooperate with the state proceedings – rather than any actions of Defendant – that led to the filing of the federal charges (Hearing Transcript at 177:2-19), and, along those lines, the constitution does not forbid authorities bringing additional charges in response to failed plea negotiations. See Goodwin, 457 U.S. 368, 377 (1982) (holding that the Fourteenth Amendment does "not prohibit a prosecutor from carrying out a threat, made during plea negotiations, to bring additional charges against an accused who refused to plead guilty to the offense with which he was originally charged").

Also fatal to Defendant's vindictive prosecution claim is that a defendant must show that vindictiveness was the sole reason for his prosecution. See United States v. Paramo, 998 F.2d

1212, 1221 (3d Cir. 1993). Because Defendant was federally indicted <u>along with his two co-Defendants</u>, this further militates against a finding that prosecutors sought to target and penalize Defendant for individually invoking his rights, or against a showing that the decision to indict him was not made due to the usual determinative factors. Stated differently, the Court finds no evidence of prosecutorial vindictiveness in the record, and will deny the motion on these grounds.

### 3.     "Pattern and practice" of falsifying affidavits

Although, as briefed, the gravamen of Plaintiff's selective and vindictive prosecution claims are, respectively, allegations that (1) Defendant was racially singled out, and (2) Defendant was retaliated against for not cooperating, Defendant also repeatedly suggested at the hearing that he believes that Detective Nadzom targeted him for prosecution in bad faith due to alleged personal animus. As Defense counsel put it, she sought to show the Court "a pattern and practice of falsifying affidavits" on the part of Nadzom. (Hearing transcript at 16:22-25, 17:1.) However, the Court is not persuaded by Defendant's proffered testimony on this point.

For example, Defendant called Octavia Williams to the stand in support of his assertion that Nadzom has been lying in warrant applications to Defendant's detriment. Williams pled guilty in state court to conspiracy to distribute drugs; according to her, her role in that conspiracy was to allow an individual by the name of "B" – she does not know his real name, but he is not Defendant – to use her home to store drugs in exchange for money. (<u>Id.</u> at 68:11-25, 69:1-21, 75:1-25.) A warrant[8] was executed at her house on June 5, 2014 (<u>id.</u> at 63:1-17); Detective Nadzom had filled out the application for that warrant, setting forth a belief that Defendant was

---

[8] None of the charges in the present action arises out of that search warrant.

using her residence for drug activities (id. at 64:1-25, 65:1-14). Notwithstanding, Williams testified at the hearing that she does not know Defendant, and that he has never entered her home.[9] (Id. at 62:18-25, 65:11-25.) Defendant invites the Court to therefore find that Nadzom made factual misrepresentations in that warrant application. However, Williams also testified that she was never home when "B" entered her home to use drugs, and, moreover, that she does not know whether "B" brought anyone else with him when he would come to her house. (Id. at 76:2-15.) Thus, as Williams effectively conceded to the Court that she has no knowledge as to whether and what individuals were involved with drugs at her apartment, the Court gives little weight to her assertions regarding Defendant's relationship to her home. As another example of allegations of Nadzom's personal animus, Defendant himself appeared to suggest on the witness stand that Nadzom planted evidence (see id. at 130:13-25); this is a serious charge, but the Court finds nothing in the record to support this assertion. Accordingly, the Court is not persuaded that the indictment should be dismissed due to any actions taken by Detective Nadzom.[10]

### C.   Disclosure of the confidential informant's identity

Defendant also asks the Court to order the government to disclose the identity of the confidential informant ("CI") who provided the information that led to the warrant executed on March 13, 2015. Defendant contends that there are "exigent circumstances" necessitating this disclosure because of the allegedly false statements in Nadzom's warrant application. (Doc. No. 65 at 23.)

---

[9] Ms. Williams clarified, however, that she does know Defendant's wife. (Hearing Transcript at 63:11-12.)

[10] The Court addresses Defendant's claims that Nadzom also lied about the confidential informant in the warrant application in Section C, infra.

The government's privilege to protect "an informant's identity serves important law enforcement objectives, most significantly, the public interest in encouraging persons to supply the government with information concerning crimes." United States v. Brown, 3 F.3d 673, 679 (3d Cir. 1993). However, "where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." United States v. Jiles, 658 F.2d 194, 196 (3d Cir. 1981). The denial of such a request is reviewed for abuse of discretion. Brown, 3 F.3d at 679.

"[O]nce a defendant sets forth a specific need for disclosure the court should balance 'the public interest in protecting the flow of information against the individual's right to prepare his defense.'" Jiles, 658 F.2d at 196 (quoting Roviaro v. United States, 353 U.S. 53, 62 (1957)). This inquiry is case specific, "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id.; see United States v. Thomas, 58 F. App'x 915, 919 (3d Cir. 2003). Instances where he Government may be required to disclose an informant's identity include when "(1) the [informant's] possible testimony was highly relevant; (2) it might have disclosed an entrapment; (3) it might have thrown doubt upon the defendant's identity; and (4) the informer was the sole participant other than the accused, in the transaction charged." United States v. Rivera, 524 F. App'x 821, 827 (3d Cir. 2013) (quoting Jiles, 658 F.2d at 198-99). However, "[w]here an informant's role was in validating a search, disclosure of his identity is not required." United States v. Bazzano, 712 F.2d 826, 839 (3d Cir. 1983).

The Court will not order disclosure of the identity of the CI, as Defendant has set forth no

concrete, specific reason for the Court to do so. As an initial matter, Third Circuit law is clear that in a pre-trial setting – and where the informant's only role was in validating the warrant, as here – disclosure is not necessary. See Bazzano, 712 F.2d at 839; United States v. Thomas, 58 F. App'x 915, 919 (3d Cir. 2003) ("[A] defendant's need to learn the identity of an informant is less compelling in a pretrial suppression hearing than at trial.").

Defendant argues, unconvincingly, that disclosure is helpful to his defense as it is relevant to a determination whether probable cause existed for the March 13, 2013 warrant. In conjunction with this contention, Defendant contends that "there is no proof . . . [the] CI exists" (Doc. No. 65 at 18), and Defendant testified that he believes he knows who the CI is and the CI would not – and did not – give up any of the information attributed to him in Nadzom's warrant application. (See Hearing Transcript at 109:1-25, 110:1-25.) However, this assertion – that Nadzom had no CI who provided the tips attributed to the CI in the warrant application – requires the Court to ignore that the execution of the warrant confirmed much of the CI's purported information, such as its use for drugs. This fact strongly suggests that Nadzom's statements regarding the CI were truthful.

Moreover, the Court does not find Defendant's testimony credible on this issue. For example, Nadzom's warrant application set forth that, according to his CI, Defendant stayed at Rivera's residence when he was in town. (Doc. No. 71-1 at 2-4.) And when police executed the warrant, Defendant was indeed staying there consistent with the CI's information and thus, in the Court's view, evincing strong proof that Nadzom's assertions regarding the CI were truthful. In arguing that the statement about his generally staying at Rivera's was a lie, Defendant testified at the hearing that he stayed at her residence only "three or four times;" he said he was only there

14

on the morning the warrant was executed as a result of an altercation with wife. (Hearing Transcript at 155:1-24.) However, it is highly implausible that Defendant had the misfortune of opting to stay at Rivera's the very night after Nadzom allegedly invented the allegation that Defendant frequently stayed there; Defendant's testimony on this issue is therefore not persuasive. Ultimately, the Court finds Defendant has offered little more than speculation concerning his allegations that Nadzom lied about the existence and testimony of the CI. For these reasons, the Court will deny the motion to reveal the identity of the confidential information.

## III. CONCLUSION

The Court will deny Defendant's omnibus pretrial motion to: (1) suppress all evidence associated with a search warrant executed on March 13, 2013, (2) dismiss the indictment for selective or vindictive prosecution, and (3) reveal the identity of the confidential informant who provided information that led to the execution of the March 13, 2013 search warrant. An order consistent with this memorandum follows.