**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANDREW ALEXANDER,** : | |
|     Petitioner : | |
| : | No. 1:14-cr-240-1 |
| v. : | |
| : | (Judge Kane) |
| **UNITED STATES OF AMERICA,** : | |
|     Respondent : | |

## MEMORANDUM

Before the Court is Petitioner Andrew Alexander ("Petitioner")'s motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 291.) For the reasons that follow, the Court will deny Petitioner's motion.

## I. BACKGROUND

During the spring of 2013, law enforcement officials began investigating a residence in York, Pennsylvania for drug trafficking. (Doc. No. 262 at 25.) Shortly before March 12, 2013, a detective conducted a trash pull from trash located outside of the residence. (Id.) The detective found plastic baggies with white powder residue, ten (10) to twelve (12) bags with the corners ripped off, mail addressed to Veronica Rivera ("Rivera"), the homeowner, and piece of paper with handwritten notes. (Id. at 26-27.) A baggie with residue tested positive for cocaine. (Id.) The notes consisted of various names with numbers next to them and appeared to be an informal ledger of drug debts, referred to as an "owe" sheet. (Id. at 28.) Law enforcement obtained a search warrant for the residence based upon the information gathered from the trash pull. (Id. at 29.)

On March 13, 2013, local law enforcement officers and agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") executed the search warrant for the premises. (Id. at 33.) They located a bag of cocaine, a scale, drug packaging materials, and

baking soda in the kitchen.  (Id. at 50-62.)  They also found unused plastic bags for packaging heroin, 86 bags of heroin, and a bag of raw heroin on the first floor.  (Id.)  Officers located Rivera and 35 grams of crack cocaine in a bedroom on the second floor.  (Id. at 55.)  They also found a bag of cocaine hydrochloride and a pair of men's pants in the bedroom.  (Id. at 61, 67.)  In the pants, officers found $2,893.00 in cash and handwritten notes similar to the "owe" sheets recovered from the trash.  (Id. at 68-70.)  In the bathroom, officers recovered 898 bags of heroin in and around the toilet bowl.  (Id. at 62, 91.)  Officers located Petitioner and Andrew Gonzalez ("Gonzalez") on the third floor of the residence.  (Doc. No. 263 at 162.)  Officers showed the pants to Petitioner, who admitted they belonged to him.  (Doc. No. 262 at 67.)

On September 3, 2014, Petitioner, Gonzalez, and Rivera were charged in a criminal complaint with possession with intent to distribute cocaine, heroin, and 28 grams and more of cocaine base in violation of 21 U.S.C. § 841, and conspiracy to possess with intent to distribute cocaine, heroin, and 28 grams and more of cocaine base in violation of 21 U.S.C. § 846.  (Doc. No. 1.)  Petitioner was arrested on September 4, 2014, and Sandra I. Thompson ("Attorney Thompson") entered an appearance on his behalf.  (Doc. Nos. 10, 12.)  On September 10, 2014, a grand jury returned an indictment charging Petitioner, Gonzalez, and Rivera with the same offenses as those set forth in the criminal complaint.  (Doc. No. 22.)

On November 19, 2014, Attorney Thompson filed an omnibus pretrial motion on Petitioner's behalf.  (Doc. No. 50.)  In this motion, Attorney Thompson sought, inter alia, to suppress evidence obtained from the trash pull conducted at Rivera's residence.  (Id.)  The Court held a hearing on Petitioner's omnibus motion on June 8, 2015.  (Doc. No. 197.)  During the hearing, counsel for the Government represented that Petitioner had obtained an expert witness, Heather Harris, to testify that "the field test used by the York City Police Department to test for

cocaine from the trash pull is not reliable to the degree that it can help establish probable cause in this particular case." (Id. at 5-6.) Ms. Harris did not testify at the hearing. Instead, the Court directed Attorney Thompson to submit "a further record of proffer by way of an affidavit" to make a sufficient offer of proof regarding Harris's proposed testimony. (Id. at 197-98.) Attorney Thompson submitted the offer of proof on June 16, 2015. (Doc. No. 120.) In a Memorandum and Order dated August 10, 2015, the Court denied Petitioner's omnibus pretrial motion. (Doc. No. 151, 152.) Subsequently, Attorney Thompson filed a motion to withdraw as Petitioner's counsel. (Doc. No. 154.) In an Order dated September 21, 2015, the Court granted Attorney Thompson's motion. (Doc. No. 156.) On October 16, 2015, David Erhard ("Attorney Erhard") was appointed to represent Petitioner. (Doc. No. 162.)

Petitioner was tried by a jury before the undersigned from March 29, 2016 through March 31, 2016. At trial, law enforcement officers involved in the investigation of Petitioner testified to the facts regarding the trash pull and execution of the search warrant set forth above. The Government also presented testimony from an expert witness regarding the differences between cocaine and crack cocaine, the manner in which quantities of crack cocaine are packaged and sold, heroin usage and trafficking, retail costs for these substances, and "owe" sheets. (Doc. No. 263 at 272-78.)

The Government also presented testimony from Gonzalez and Rivera. Gonzalez testified that Petitioner had asked him if he was interested in bagging heroin for him. (Doc. Nos. 262 at 106-08; 263 at 142-44.) Gonzalez agreed to do so, and Petitioner provided him a scale, bags, and other equipment to package drugs. (Doc. No. 262 at 105.) Gonzalez packaged approximately 80 bags of heroin but did not complete that task before the warrant was executed.

(Id. at 107-10.) He affirmed that a quantity of heroin that officers had located in a canvas bag was heroin that Petitioner had provided to him for packaging. (Id.)

Rivera testified that she had met Petitioner through a mutual friend and that she had been in a relationship with Petitioner. (Doc. No. 263 at 191.) Over time, Petitioner asked her to drive him to various places to obtain "stuff." (Id. at 193.) Rivera observed him obtain heroin on many of these occasions. (Id. at 195.) She also witnessed him receiving cocaine and marijuana. (Id. at 194.) Rivera testified that she drove Petitioner to Gettysburg, Pennsylvania on two (2) or three (3) occasions to meet a source of supply there. (Id.) Rivera indicated that she had driven Petitioner to Gettysburg to obtain heroin and cocaine the day prior to the execution of the search warrant. (Id. at 196-200.) Petitioner and a third person, Juan Castro ("Castro"), then cooked the cocaine into crack cocaine at her residence. (Id.) Petitioner and Castro left the residence, leaving Rivera to bag the crack cocaine. (Id.) Rivera testified that she had taken the crack cocaine to her bedroom to bag it but was unable to do so before the search warrant was executed. (Id.)

During their deliberations, the jury submitted a note to the Court stating, "Can we decide on one count but not decide on the second? We are not coming to a conclusion. We are not unanimous on Count 1." (Doc. No. 264 at 360.) The Court consulted with counsel, and all parties agreed that taking a partial verdict would be premature. (Id. at 361.) Attorney Erhard noted that he was not opposed to an instruction that the jury continue to deliberate. (Id.) The Court directed the jury to its instruction that they are to consider each offense separately. (Id. at 362.)

The jury subsequently sent a second note to the Court, stating "We cannot come to a unanimous vote on a count. We are split and not budging." (Id. at 362.) Counsel agreed that the

4

Court should ask the jury whether it should recess for the evening and resume deliberations in the morning. (Id. at 366.) The Court did so, and the jury submitted another note stating, "We are split with strong opinions on one count. We feel that this will not change overnight. We are willing to continue." (Id.) The Court, therefore, permitted the jury to continue deliberations. (Id.) Twenty (20) minutes later, the jury returned a verdict, which was unanimous. (Id.) The jury found Petitioner guilty of Count One, conspiracy to distribute controlled substances, and found that the controlled substance he had conspired to distribute was heroin. (Doc. No. 215 at 1-2.) The jury found Petitioner not guilty of Count Two, which charged him with possession with intent to distribute controlled substances. (Id. at 3.)

Following the jury trial, the United States Probation Office prepared a Presentence Report ("PSR"). (Doc. No. 259.) The PSR noted that Petitioner was a career offender pursuant to § 4B1.1 of the United States Sentencing Guidelines because of his prior convictions for robbery and delivery of cocaine. (Id. ¶¶ 28, 36, 41.) By operation of the career offender designation, Petitioner fell within criminal history category VI. (Id. ¶ 44.) The probation officer noted, however, that even without the career offender designation, Petitioner's total criminal history score of 17 still placed him within criminal history category VI. (Id.) Attorney Erhard objected to the career offender designation and requested a hearing "to present and contest relevant information." (Doc. No. 260 at 6-7.)

On September 20, 2016, the parties appeared before the Court for a sentencing hearing (Doc. No. 286), where the Court directed counsel to "outline the evidence in short briefs regarding the career offender status of this defendant along with drug amounts, role in the offense and any other objections brought by the defendant to the PSI Report that was presented during that hearing" (Doc. No. 269). After receiving the parties' briefs, in an Order dated

December 15, 2016, the Court sustained Petitioner's objection to the drug weight calculation in part, overruled his objection to the career offender designation after concluding that Petitioner's robbery conviction qualified as a crime of violence pursuant to § 4B1.2 of the Sentencing Guidelines, sustained his objection to the two-level enhancement for possession of a firearm, and sustained his objection to the three-level enhancement for having a role as a manager or supervisor in a criminal activity involving five or more participants. (Doc. No. 279.)

The parties appeared before the Court for Petitioner's sentencing on December 14, 2016. (Doc. No. 287.) The Court noted that with the career offender designation, Petitioner's Sentencing Guidelines range called for 210 to 240 months' imprisonment. (Id. at 3.) Without the career offender designation, Petitioner's range would have been 100 to 125 months' imprisonment. (Id.) After hearing from Attorney Erhard and Petitioner, the Court noted that "technically the characterization of career offender is proper under the [G]uidelines." (Id. at 20.) The Court concluded, however, that "a sentence in the career offender guideline range of 210 to 240 months would be excessive when [it] consider[s] the seriousness of the offense that [brought Petitioner] before the [C]ourt." (Id.) Accordingly, the Court found that "a sentence in excessive of that which he would have received had he not received the offender, career offender bump from a 24 to 32 offense level, somewhere in between those two ranges would be appropriate and just under all of the circumstances." (Id.) Ultimately, the Court sentenced Petitioner to 144 months of incarceration. (Id. at 21; Doc. No. 283.)

On December 19, 2016, Petitioner, acting pro se, filed an appeal of this Court's judgment of conviction. (Doc. No. 284.) On appeal, Petitioner challenged his sentence, arguing that the Court erred by using a drug-weight calculation that included cocaine and cocaine base even though he had been acquitted of conspiracy to distribute those substances. See United States v.

6

Alexander, 710 F. App'x 105, 106 (3d Cir. 2017). The United States Court of Appeals for the Third Circuit affirmed this Court's judgment of conviction on September 27, 2017. See id.

On December 26, 2018, Petitioner, proceeding pro se, filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, raising four claims for relief. (Doc. No. 291.) Specifically, Petitioner asserted the following four claims:

> Ground One: Counsel provided ineffective assistance by failing to object to the use of Petitioner's prior conviction for delivery of cocaine as a predicate offense for the career offender designation;
>
> Ground Two: Counsel provided ineffective assistance "by failing to file post-conviction motions during and after trial";
>
> Ground Three: Counsel provided ineffective assistance "by failing to subpoena [the] expert [witness] that was hired for trial testimony"; and
>
> Ground Four: Counsel provided ineffective assistance "by not providing [Petitioner] with [his] Jencks material in a timely fashion."

(Id. at 4-8.) In an Order dated June 10, 2019, the Court directed the Government to respond to Petitioner's motion. (Doc. No. 294.) After receiving an extension of time to file a response (Doc. Nos. 296, 299), the Government filed a brief in opposition on July 22, 2019. (Doc. No. 301.) To date, Petitioner has filed neither a reply brief nor an extension of time to do so. Accordingly, because the time period for filing a reply brief has expired, Petitioner's § 2255 motion is ripe for resolution.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a).

7

However, Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing. See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)). Rather, Section 2255 is implicated only when the alleged error raises "a fundamental defect which inherently results in a complete miscarriage of justice." See Addonizio, 442 U.S. at 185. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner has one year from the time his conviction becomes final to file a Section 2255 motion. See 28 U.S.C. § 2244.

In order to establish entitlement to relief, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). See George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001). The first Strickland prong requires Petitioner to "establish first that counsel's performance was deficient." See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). This prong requires Petitioner to show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. See id. To that end, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. See id. (citing Strickland, 466 U.S. at 688). However, "[t]here is a 'strong presumption' that counsel's performance was reasonable." See id.

Under the second Strickland prong, Petitioner "must demonstrate that he was prejudiced by counsel's errors." See id. This prong requires Petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See id. (quoting Strickland, 466 U.S. at 694). Reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." See id. (quoting Strickland, 466 U.S. at 694).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

#### 1. Ground One: Failing to Challenge the Use of Petitioner's Prior Cocaine Delivery Conviction as a Career Offender Predicate

Petitioner first contends that Attorney Erhard rendered ineffective assistance by failing to challenge the use of Petitioner's prior conviction for delivery of cocaine as a predicate for the career offender designation. (Doc. No. 291 at 4.) Specifically, Petitioner contends that pursuant to various Supreme Court and circuit court decisions, Pennsylvania's definition of a controlled substances offense "reaches [more] broadly" than that set forth in the Sentencing Guidelines. (Id.; Doc. No. 291-1 at 2.) As discussed below, the Court finds that Petitioner's claim lacks merit.

The Sentencing Guidelines provide that a defendant may be deemed a "career offender" if he has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." See U.S.S.G. § 4B1.1(a). The Guidelines define a "controlled substance offense" as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Id. § 4B1.2. As noted above, the probation officer concluded that Petitioner's prior conviction for delivery of cocaine qualified as a controlled substance offense under the Guidelines.

Petitioner asserts that his prior conviction should not have been used as a predicate for the career offender designation in light of the decision rendered in United States v. Hinkle, 832 F.3d 569 (5th Cir. 2016). In Hinkle, the United States Court of Appeals for the Fifth Circuit concluded that Texas's statute criminalizing drug distribution included a broader definition of

9

delivery than that set forth in the Sentencing Guidelines because Texas's statute considered offers to sell as constituting a delivery. See id. at 572. The Fifth Circuit, therefore, vacated Hinkle's sentence upon concluding that the career offender designation did not apply. See id. at 571.

This Court has already rejected such an argument as a basis for relief. See United States v. Stroman, Nos. 3:14cr2703, 3:17cv678, 2018 WL 2766651, at *5 (M.D. Pa. June 8, 2018). Petitioner was convicted of delivery of cocaine in violation of 35 Pa. Cons. Stat. § 780-113(a)(30). (Doc. No. 301 at 17.) That statute prohibits "manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance . . . or . . . a counterfeit controlled substance." See 35 Pa. Cons. Stat. § 780-113(a)(30). "Delivery" is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance." Id. § 708-102. As this Court concluded in Stroman, "the Pennsylvania statutory language and definitions are in line with the Guidelines, and . . . [are] distinguishable from [the statute at issue in] Hinkle." See Stroman, 2018 WL 2766651, at *5. Moreover, the Third Circuit recently recognized that Pennsylvania's drug trafficking statute is different from the Texas statute at issue in Hinkle and that "because § 780-113(a)(30) does not sweep more broadly than § 4B1.2, it is a 'controlled substance offense' and may serve as a predicate offense to a career-offender enhancement under § 4B1.1." See United States v. Glass, 904 F.3d 319, 323-24 (3d Cir. 2018). Any argument by Petitioner's counsel otherwise would have been meritless, and "counsel cannot be deemed ineffective for failing to raise a meritless claim." See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000). Accordingly, Petitioner is not entitled to relief on this basis.

## 2. Ground Two: Failing to File Motions During and After Trial

As his second ground for relief, Petitioner maintains that counsel was ineffective for "failing to file post-conviction motions during and after trial." (Doc. No. 291 at 5.) According to Petitioner, he asked counsel to make an oral motion for a mistrial when the jury was deadlocked. (Id.) Petitioner also argues that he asked counsel to "file motions to challenge [his] Jencks material [because he] received half of [it] before trial and [the] other half after trial." (Id.)

As an initial matter, with the exception of an oral motion for a mistrial, Petitioner fails to set forth facts regarding what motions he requested counsel to file. Moreover, Petitioner fails to specify what Jencks Act violations allegedly occurred and how he was prejudiced by those alleged violations. Such vague allegations are insufficient to warrant relief under § 2255. See Johnson v. United States, 294 F. App'x 709, 710 (3d Cir. 2008) (noting that "vague and conclusory allegations . . . may be disposed of without further investigation").

Petitioner has also not demonstrated that counsel was ineffective for failing to move for a mistrial orally based upon the jury being "deadlocked." The Third Circuit has set forth a series of procedures, adopted from the Third Circuit's Model Criminal Jury Instructions, to follow when a jury has communicated its inability to reach a verdict. See United States v. Wecht, 541 F.3d 493, 500-01 (3d Cir. 2008). First, a court should instruct the jury to continue to deliberate. See id. at 500. If further deliberations are unsuccessful, the Court should ask the foreperson, then individually inquire of the jurors, whether further deliberations would be productive. See id. If the jurors "reflect that they are deadlocked, the [C]ourt should excuse the jury and hold a hearing with counsel and the defendant. The [C]ourt should elicit the positions of all the parties, taking particular care to get a record of the position of the defendant(s) and defense counsel on whether to declare a mistrial." See id.

The Court agrees with the Government that defense counsel was not ineffective for failing to move for a mistrial. As set forth supra, in response to the jury's first note, the Court instructed the jury to keep in mind the instruction that they consider each offense separately. (Doc. No. 264 at 362.) The jury subsequently sent another note to the Court in which it indicated that it could not come to a unanimous vote on one count and was not "budging." (Id.) The parties agreed that the jury should be asked whether it preferred to recess for the evening and resume deliberations in the morning. (Id. at 366.) Shortly thereafter, the jury responded that members' opinions would not "change overnight" and that it was willing to continue deliberations. (Id.) The parties agreed that it was appropriate to allow the jury to continue their deliberations given the indication that it was willing to do so. (Id.)

In light of the jury's indication that it was willing to continue deliberations, counsel acted reasonably in not making an oral motion for a mistrial. Such a motion would have been meritless, and as noted above, "counsel cannot be deemed ineffective for failing to raise a meritless claim." See Werts, 228 F.3d at 203. Thus, because Petitioner has failed to demonstrate that counsel's representation was deficient and that he was prejudiced as a result, his fourth ground for relief is meritless.

### 3. Ground Three: Failing to Subpoena Expert Testimony for Trial

Petitioner next contends that counsel was ineffective for failing "to call expert chemist Heather Harris . . . as a trial witness to testify to her 'Officer of Proof and Reports of Facts.'" (Doc. No. 291 at 7.) As noted supra, Attorney Thompson offered Harris as a potential witness during pretrial proceedings to present testimony regarding the appropriateness of field test procedures used by the York City Police Department with respect to cocaine. Harris' expert opinion did not challenge the examination of the heroin recovered from Rivera's residence.

12

Petitioner fails to explain, and the Court fails to discern, how Harris' testimony would have assisted his defense because he was convicted only of conspiracy to distribute heroin. The Court agrees with the Government that this "[v]ague and conclusory allegation[] . . . may be disposed of without further investigation." See Johnson, 294 F. App'x at 710; see also Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991) (explaining that a defendant asserting a claim of ineffective assistance of counsel "cannot meet his burden to show that counsel made errors so serious that [the] representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense"). Thus, because Petitioner has failed to demonstrate that counsel's representation was deficient and that he was prejudiced as a result, his third asserted basis for relief is meritless.

### 4. Ground Four: Failing to Provide Jencks Material to Petitioner in a Timely Manner

As his last ground for relief, Petitioner contends that counsel was ineffective for "not providing [him] with [his] Jencks material in a timely fashion." (Doc. No. 291 at 8.) Petitioner also faults counsel for "refus[ing] to file motions before trial regarding the newly discovered evidence from the Jencks material." (Id.) He maintains that if he had been provided "with all the Jencks material in a timely fashion, [he] would have been able to better prepare for trial." (Id.) As discussed supra with respect to Ground Two, Petitioner fails to specify what Jencks Act violations allegedly occurred and how he was prejudiced by those alleged violations. He also fails to specify how he would have better prepared for trial if he had received all of his Jencks material in a timely fashion. Again, these vague allegations are plainly insufficient to warrant relief under § 2255. See Johnson, 294 F. App'x at 710. Accordingly, the Court concludes that Petitioner's fourth ground for relief is meritless.

### B. Evidentiary Hearing

Section 2255(b) advises that a petitioner may be entitled to a hearing on his motion. The decision to hold a hearing is wholly within the discretion of the district court. See Gov't of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). Where the record affirmatively indicates that a petitioner's claim for relief is without merit, a court may decide the claim on the record without a hearing. See Gov't of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985). In the instant case, as discussed above, the Court finds that "the motion and files and records of this case show conclusively that the movant is not entitled to relief." See United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Forte, 865 F.2d at 62). Accordingly, the Court finds no reason to hold an evidentiary hearing in this matter.

### C. Certificate of Appealability

In proceedings brought under Section 2255, a petitioner cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued. A court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). In other words, a COA should not issue unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Because the Court concludes that Petitioner's claims of ineffective assistance are meritless, the Court finds that reasonable jurists would not disagree with the Court's assessment of Petitioner's claims. Accordingly, a COA will not issue in this case.

## V. CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's § 2255 motion (Doc. No. 291) and will not issue a COA. An appropriate Order follows.